UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

ALICE M. REPA,

        Plaintiff,

        v.                                    Case No. 03-C-1071

ROADWAY EXPRESS, INC.,

        Defendant.

ORDER GRANTING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
(DOC. # 28) AND ORDER DENYING THE DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DOC. # 34)

This case involves an action for damages and attorneys' fees pursuant to the Family Medical Leave Act, 29 U.S.C. §§ 2601-54. Specifically, the plaintiff, Alice M. Repa, alleges that the defendant, Roadway Express, Inc., violated § 2612(d)(2) of the Family Medical Leave Act (FMLA) and 29 C.F.R. § 825.207(d)(1) by requiring her to use her accrued vacation and sick leave during her FMLA leave. According to the plaintiff, the statute and the regulation permit such a substitution only where the leave is unpaid. However, because she received disability benefits from the Wisconsin Health Fund during her FMLA leave, the plaintiff contends that it was not an unpaid leave and that the defendant acted unlawfully.

The plaintiff under 29 U.S.C. § 2617(a)(1) and (d)(3), moves the court for (1) damages equal to the amount of any wages, employment benefits, or other compensation denied or lost, and/or other losses sustained by reasons of the violation, plus interests, (2) liquidated damages equal to her lost wages, benefits and other compensations and (3) reasonable attorneys' fees and costs. The defendant denies liability and claims that the

Collective Bargaining Agreement with the Teamsters General Local 200 and the FMLA, permit it to require the substitution of accrued paid leave while on leave under the FMLA. (Def.'s Answer ¶¶ 10-11.)

Pending before the court are cross motions for summary judgment. For the reasons explained herein, the court will grant the plaintiff's motion and deny the defendant's motion.

## I. Jurisdictional Facts

This court has federal question jurisdiction over the case.[1] *See* 28 U.S.C. § 1331.[2] Under 29 U.S.C. § 2617(a)(2), the plaintiff may maintain an action in a Federal court of competent jurisdiction against the defendant to recover damages for violation of her right under the FMLA. See 28 U.S.C. § 2617(a)(2).[3]

The plaintiff is a Wisconsin resident who resides in Racine, Wisconsin. (Compl. ¶ 1.) Whereas, the defendant, a Delaware corporation engaged in the business of commercial trucking and transportation services, maintains a place of business at in Oak Creek, Wisconsin. (Id. ¶ 4; Def.'s Answer ¶ 4.) At all times relevant to this cause of action, the defendant conducted substantial business activities in Milwaukee County, Wisconsin. (Id.) Therefore, this court has personal jurisdiction over the defendant. Lastly, pursuant to 28 U.S.C. §1391(a), venue within this district is proper because a substantial part of the events giving rise to the plaintiff's alleged claims occurred in the Eastern District of Wisconsin. (Compl. ¶ 4; Def.'s Answer ¶ 4.)

## III. Findings of Fact

The plaintiff is a member of the Teamsters Union Local 200 and the defendant is a member of a multi employer bargaining association known as Tracking Management,
2

Inc., (TMI). (Compl. ¶ 3; Def.'s Answer ¶ 3; Kobelt Decl., at 8.) Because of the defendant's membership in TMI, he is bound to the National Masters Freight Agreement (NMFA), a collective bargaining agreement that TMI and the Teamsters negotiate. (Id.; Def.'s Resp. to Pl.'s Proposed Findings of Fact ¶ 7; Pl.'s Br. at 2.)

The NMFA covers employees in the freight industry. (Lovely Decl. ¶ 4.) As a party to the NMFA and in accordance with the collective bargaining agreement, the defendant and other employers make a financial contribution to the Wisconsin Health Fund (WHF) for various benefits on behalf of their employees who are members of Teamsters Local Union 200 and who work in the Milwaukee area.[4] (Lovely Decl. ¶¶ 2, 4, 6; Harrison Dep. at 9-10.)

The WHF is a not-for-profit, multi employer, Taft-Hartley trust fund, established by, and operated pursuant to a trust agreement (Trust Agreement) adopted in accordance with the provisions of § 302 of the Labor-Management Relations Act, 29 U.S.C. § 186. (Lovely Decl. ¶¶ 1, 2, 4, 6; Harrison Dep. at 9-10.) It administers and otherwise manages certain benefits for Teamsters members employed in the State of Wisconsin. (Harrison Dep. at 9-10.) These benefits include a Loss of Time Disability Benefit that provides income support to employees who are unable to work because of a disability that occurred outside of the workplace, subject to the terms of its plan document. (Harrison Dep. at 13; Lovely Decl. ¶ 2; Pl.'s Br. at 3.)

A Board of Trustees is authorized to administer the WHF. (Lovely Decl. ¶ 3.) The Board consists of eight members and pursuant to the terms of the Trust Agreement, four of those members are representatives of participating employers'; the remaining four members are representatives of participating employees'. (Id.)

3

None of the employer representatives on the Board is employed by the defendant. (Harrison Dep. at 49.) Further, the defendant does not have a right to determine an employee's eligibility for the WHF Loss of Time Disability Benefits, cannot terminate or continue an employee's benefits and cannot change how Loss of Time Benefits are distributed to employees. (Id. at 47, 48.) Moreover, the defendant has no authority over how the WHF's funds are managed and must use the WHF to provide Loss of Time Benefits. (Id. at 47-49.) Indeed, the WHF does not notify the defendant when an employee's Loss of Time Benefits are granted. (Id. at 48.) Further, the only information the defendant provides to the WHF respecting an employee's eligibility for Loss of Time Benefits is whether the injury arose in the course of employment, the date the employee became unable to work and the date the employee is expected to return to work. (Id. at 49; Ex. 5.)

Article 54 of the NMFA obligates the defendant to make weekly contributions to the WHF on behalf of the plaintiff. (Harrison Dep. at 10, 23.) For each employee participating in the WHF, the defendant contributes $4.33 per week. (Lovely Decl. ¶ 5.) Employees, qualifying for Loss of Time Benefits receive $300.00 pretax dollars each week without cost to them. (Id.) The WHF benefit plan summary states:

> [t]o qualify for Loss of Time Benefits, you must be employed, eligible based on employer contributions and be covered by your Plan when you become injured, ill or unable to work due to pregnancy. To receive Loss of Time Benefits, you must be under the care of a doctor and be disabled as a result of a non work related injury or illness, or be under the care of a doctor and unable to work due to pregnancy.

(Lovely Decl., Ex. 1.)

On or about May 17, 2003, the plaintiff broke her ankle. (Compl. ¶ 5; Harrison Dep. at 19). This non work related injury rendered her unable to work and required the

4

plaintiff to have surgery and to take time off from work to recover and seek treatment. (Compl. ¶ 6; Lovely Decl., Ex. 2.) Consequently, on May 23, 2003, the plaintiff submitted an application for Loss of Time Benefits to the WHF. (Lovely Decl., Ex. 2.) This application required the employee, the employer and the attending physician to provide information regarding the facts and circumstances surrounding the application for benefits. (Id.) The plaintiff completed Part A and on May 23, 2003, Steve Nasdoff, an employee of the defendant, completed and signed Part B of the application. (Id.) In completing Part C, the plaintiff's physician estimated that the plaintiff would be able to return to work after a six-week period of recovery from the broken ankle and subsequent surgery. (Id.)

The plaintiff contends that by completing Part B of the application, Nasdoff, on behalf of the defendant, provided verification that the plaintiff was not able to return to work for a period of approximately six weeks beginning on May 19, 2003. (Harrison Dep. at 22; Lovely Decl., Ex. 2.) But the defendant offers that in completing the application, Nasdoff was merely verifying that the plaintiff did not work during that period of time. Nevertheless, based on the information provided in the application, the WHF granted the plaintiff's request for six weeks of temporary disability benefits under the Loss Time Benefits. (Lovely Decl. ¶ 6.)

Using the defendant's form, on May 23, 2003, the plaintiff notified the defendant of her desire to take a medical leave under the FMLA because of her broken ankle. (Harrison, Dep., at 19; Ex. 4.) She requested leave beginning on May 19, 2003, and continuing until June 30, 2003. (Harrison Dep., Ex. 4; Compl. ¶ 10.) The leave application was approved on June 5, 2003. (Harrison Dep. at 19-20; Ex. 4).

The defendant's FMLA leave form states that employees are required "to substitute accrued paid leave for any unpaid FMLA leave." (Harrison Dep. at 26; Ex. 4.) This

5

policy is included in the multi employer NMFA with the Teamsters Union. (*Id.* at 8; Ex 1.) The defendant knew that the plaintiff received WHF Loss of Time Benefits for the duration of her temporary disability period. (Harrison Dep. at 27-28.) But, consistent with company policy and the NMFA, the defendant required the plaintiff to use her accrued sick leave and vacation time while she was on leave under the FMLA. (Comp. ¶ 10.)

On June 20, 2003, the plaintiff returned to work and discovered that the defendant had required her to exhaust her accrued vacation and sick leave days, while she was on approved FMLA leave and receiving the WHF temporary disability benefits. (Def.'s Answer ¶ 10.) By letter dated August 13, 2003, the defendant advised the Teamsters Local Union 200 that it could require an employee to use accrued paid time "unless the employee is receiving paid disability benefits directly from a plan" it administered. (Harrison Dep., Ex. 6.)

V. Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating it is entitled to summary judgment. Id. at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend each element of her cause of action, showing that there is a genuine issue for trial. Id. at 322-24. In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The mere existence of some factual dispute does not defeat a summary judgment motion; there must be a genuine issue of material fact for the case to survive. *Id.* at 247-48. "Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. Therefore, summary judgment is appropriate against a party who, after adequate time for discovery and in the face of a properly supported summary judgment motion, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322.

To establish that a question of fact is "genuine," the opposing party must present specific and sufficient evidence that, if believed by a jury, would actually support a verdict in her favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. A "metaphysical doubt as to the material facts" is insufficient to defeat a motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Regensburger v. China Adoption Consultants, Ltd.,* 138 F.3d 1201, 1205 (7th Cir. 1998). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587. "A district judge faced with [a summary judgment] motion must decide . . . whether the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict. If not, the motion should be granted and the case dismissed." *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572-73 (7th Cir. 1989) (citations omitted).

7

## VI. Discussion

One purpose of the FMLA is "to entitle employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(2). Congress directed that the Act be administered to accomplish its purposes "in a manner that accommodates the legitimate interests of employers." § 2601(b)(3). Under 29 U.S.C. § 2612(a)(1)(D), an eligible employee has the right to take an unpaid leave for a period of up to twelve work-weeks in any twelve month period for a serious health condition that renders the employee incapable of performing the duties of the employee's position.[5] To ensure that this right is available to an eligible employee, the statute makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or attempt to exercise, any right provided." § 2615(a)(1).

Ordinarily, FMLA leave is unpaid. 29 C.F.R. § 825.207(a). But in certain situations, the statute permits the employee to use accrued leave while off work under the FMLA. 29 U.S.C. §2612(d)(2)(A) and (B). In the event the employee does not exercise this option, the statue allows the employer, in specific circumstances, to require the employee to substitute accrued leave for FMLA leave. Id. Consequently, the effect of the substitution, in limited situations, allows the employee to receive some financial support during family medical leave.

> The section discussing substitution provides that
>
> [a]n eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or family leave of the employee for leave provided under subparagraph (A), (B), or (C) of subsection (a)(1) of this section for any part of the 12-week period of such leave under such subsection.

§ 2612(d)(2)(A). Subparagraph (A) of § 2612(a)(1) concerns an employee's leave for the birth and care of a child. Subparagraph B deals with leave to care for a child placed with the employee for adoption or foster care. And subparagraph C applies when the employee must take leave to care for a spouse, a child or the employee's parent who has a serious health condition. Here, because the plaintiff took the FMLA leave under § 2612(a)(1)(D) to care for her serious health condition, § 2612(d)(2)(A) is not applicable. Instead, the relevant section is § 2612(d)(2)(B), which addresses the substitution of paid leave for a serious health condition involving the employee or the employee's parent, spouse or child.

> Under § 2612(d)(2)(B),
>
> [a]n eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or medical or sick leave of the employee for leave provided under subparagraph (C) or (D) of subsection (a)(1) of this section for any part of the 12-week period of such leave under such subsection, except that nothing in this subchapter shall require an employer to provide paid sick leave or paid medical leave in any situation in which such employer would not normally provide any such paid leave.

§ 2612(d)(2)(B). Department of Labor regulations advise that such "[s]ubstitution of paid accrued vacation, personal, or medical/sick leave may be made for any (otherwise) unpaid FMLA leave needed to care for a family member or the employee's own serious health condition." 29 C.F.R. § 825.207(C).

However, the DOL regulations provide an exception under § 825.207(d)(1) which states:

> Disability leave for the birth of a child would be considered FMLA leave for a serious health condition and counted in the 12 weeks of leave permitted under FMLA. Because the leave pursuant to a temporary disability benefit plan is not unpaid, the provision for substitution of paid leave is inapplicable. However, the employer

9

> may designate the leave as FMLA leave and count the leave as running concurrently for purposes of both the benefit plan and the FMLA leave entitlement. If the requirements to qualify for payments pursuant to the employers' temporary disability plan are more stringent than those of FMLA, the employee must meet the more stringent requirements of the plan, or may choose not to meet the requirements of the plan and instead receive no payments from the plan and use unpaid FMLA leave or substitute available accrued paid leave.

29 C.F.R. § 825.207(d)(1). Under a plain reading of the second sentence of this regulation, the statute's provision concerning the substitution of accrued leave for an FMLA unpaid leave is not applicable when the employee receives benefits from a temporary disability plan because such a leave is a paid leave. *Id.* Nothing in the second sentence of the regulation limits this outright prohibition to situations where the temporary disability benefit plan is the employer's plan. While two sentences later the regulation references an employer's temporary disability plan, there is no such distinction drawn in the second sentence between a temporary disability plan run by the employer and one administered by a third-party.

The fourth sentence does not add clarity to the first sentence. Rather, it gives the employee three options when the temporary disability plan is the employer's plan. Should the employer's temporary disability plan require a higher standard to qualify for payment than the standards outlined in the FMLA, the regulations permit the employee to (1) satisfy the employer's requirements, (2) forgo these benefits including any payment under the employer's temporary disability plan and take unpaid FMLA leave, or (3) substitute any available accrued leave. Nothing in the fourth sentence permits the employer to exercise the substitution right that the second sentence of the regulation forbids expressly. This construction of the regulation does not "ignore the fourth sentence altogether" and does not force the court to disregard "the express reference to 'an employer's temporary disability plan.'" (Def.'s Reply

10

at 3.) Similarly, 29 C.F.R. § 825.207(d)(2), does not permit the employer to exercise the substitution right when the leave is pursuant to a worker's compensation absence inasmuch as it states that such leave is not unpaid. 29 C.F.R. § 825.207(d)(2).

Opinion letters issued by the Department of Labor's Administrator of the Wage and Hour Division have been useful in considering the questions presented in this case. However, in *Skidmore v. Swift & Co.*, the Supreme Court observed that

> [t]here is no statutory provision as to what, if any, deference courts should pay to the Administrator's conclusions. And, while we have given them notice, we have had no occasion to try to prescribe their influence. The rulings of this Administrator are not reached as a result of hearing adversary proceedings in which he finds facts from evidence and reaches conclusions of law from findings of fact. They are not, of course, conclusive, even in the cases with which they directly deal, much less in those to which they apply only by analogy. They do not constitute an interpretation of the Act or a standard for judging factual situations which binds a district court's processes, as an authoritative pronouncement of a higher court might do.

323 U.S. 134, 139 (1944). Nonetheless, the Supreme Court noted that

> the Administrator's policies are made in pursuance of official duty, based upon more specialized experience and broader investigations and information than is likely to come to a judge in a particular case. They do determine the policy which will guide applications for enforcement by injunction on behalf of the Government. Good administration of the Act and good judicial administration alike require that the standards of public enforcement and those for determining private rights shall be at variance only where justified by very good reasons. The fact that the Administrator's policies and standards are not reached by trial in adversary form does not mean that they are not entitled to respect.

*Id.* at 139-40. Recognizing that these opinion letters are not controlling, the Supreme Court declared that they "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Id.* at 140. Consequently, the weight of the

judgment articulated in these letters "in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, If lacking power to control." *Id.*

This court has looked to two opinion letters cited by the plaintiff in support of her claim. The Department of Labor issued an opinion letter on December 12, 1997, advising that

> [a]s explained in the preamble to the regulations, leave under a temporary disability plan, whether public or private, or under a workers' compensation law is not a form of "accrued paid leave" within the meaning of the FMLA (see 60 Fed. Reg. 2180, 2205-06 (1995), preamble to 29 CFR 825.207). Nor is such leave under a temporary disability plan or workers' compensation law "unpaid" leave within the meaning of the FMLA (see 29 CFR 825.207(d)(1) and (2)) . . . Similarly, an employee is precluded from relying upon FMLA's substitution provision to insist upon receiving both temporary disability or workers' compensation and accrued paid leave benefits during such an absence.

(Id. at 7.)

A December 28, 1994, opinion letter provides a general overview of the FMLA. In the explanation, the Administrator decrees that

> [a]n employer, however, cannot require the employee to substitute, under FMLA, any paid vacation or other leave during the absence that would otherwise be covered by payments from plans covering temporary disabilities. Whether such temporary disability plans are provided voluntarily through insurance or under a self-insured plan or required to meet state-mandated disability provisions (e.g., pregnancy disability laws) would make no difference. The employer may designate and credit the temporary disability leave of absence against the FMLA 12-week annual entitlement so long as the reason for the leave is qualifying, the employee has been properly notified of the designation prior to the start of leave, and the employee's health care benefits have been maintained during the leave of absence. An employee's receipt of such payments precludes the employee from electing and prohibits the employer from requiring the

> substitution of any form of accrued paid leave for any part of the absence covered by such payments.
>
> An employer is prohibited from discriminating against an employee who uses FMLA leave (Reg. 29 CFR 825.220(c)).

Dep't of Labor Op. Ltr. FMLA-52 (Dec. 28, 1994). Consistent with the statute and the regulations, the DOL Administrator, who bears the primary responsibility for the administration and enforcement of the FMLA, reiterates the pronouncement that the employer cannot require the employee to use any available accrued time while they are on a FMLA leave receiving temporary disability benefits.

The December 12, 1997, opinion letter addresses four questions, two of which are relevant to this court. The first asked, "whether such temporary disability leave or workers' compensation absences are paid leave within the meaning of the FMLA" and the second "whether the employer or employee may substitute paid vacation, personal or medical or sick leave for such leave." Dep't of Labor Op. Ltr. FMLA-92 (Dec. 12, 1997). In response, the administrator stated,

> [a]s explained in the preamble to the regulations, leave under a temporary disability plan, whether public or private, or under a workers' compensation law is not a form of "accrued paid leave" within the meaning of the FMLA. Nor is such leave under a temporary disability plan or workers' compensation law "unpaid" leave within the meaning of the FMLA. Therefore, where a work-related illness or injury constitutes a serious health condition which triggers application of the FMLA, and the employee has elected to receive payments from a private disability plan or from a state workers' compensation plan, the employer cannot require the employee to substitute, under section 102(d), any paid vacation, personal, or medical or sick leave, for any part of the absence that is covered by the payments under the temporary disability plan or under a workers' compensation plan. Similarly, an employee is precluded from relying upon FMLA's substitution provision to insist upon receiving both temporary disability or workers' compensation and accrued paid leave benefits during

13

such an absence. In accordance with the regulations, however, the employer may, at the beginning of the absence, designate the temporary disability leave or workers' compensation absence as FMLA leave and count the period of the absence under both the temporary disability plan or workers' compensation plan and FMLA.

*Id.* (internal citations omitted.) The court construes this letter to mean that when an employee on an FMLA leave receives payments from a temporary disability plan, the FMLA does not consider that leave to be unpaid. Should the employee elect to receive payments from the disability plan, "the employer cannot require the employee to substitute, . . ., any paid vacation, personal, or medical or sick leave, for any part of the absence of that is covered by the payments under the temporary disability plan . . . ." *Id.*

Consistent with the court's reading of the regulations, nothing in the Administrator's opinion, makes the prohibition contingent upon whether or not the employer is administering the temporary disability benefits. Indeed, the distinction is inconsequential and frankly irrelevant. Nine years after the issuance of the December 28, 1994, opinion letter, the Administrator reached the same outcome in an opinion letter dated December 17, 2003. This letter advises that

> [g]enerally, pursuant to Regulations 29 CFR 825.207, an employer may require the employee to substitute accrued paid leave for unpaid FMLA-qualifying leave. However, an employer cannot require an employee to substitute, under FMLA, any paid vacation or other leave during the absence that would otherwise be covered by payment from plans covering temporary disabilities. Because the leave pursuant to a temporary disability benefit plan is not unpaid leave, the provision for substitution of paid leave is inapplicable. An employee's receipt of such payment precludes the employee from electing and prohibits the employer from requiring the substitution of any form of accrued paid leave for any part of the absence covered by such payments. However, the employer may designate the paid leave under a temporary disability plan as FMLA leave and count the leave as running

14

> concurrently for purposes of both the benefit plan and the FMLA leave entitlement. See 29 CFR 25.207(d).

Dep't of Labor Op. Ltr. FMLA (Dec. 17, 2003).

The defendant fails to realize that the express prohibition in 29 C.F.R. § 825.207(d)(1) prevents it from "administering its paid sick leave and vacation policies in the way it has chosen." While 29 U.S.C. § 2612(d)(2)(B) gives the defendant a substitution right, the regulations promulgated by the branch of government charged with implementing the statute advise that such a substitution is not available to the employer when the employee receives a temporary disability benefit during the FMLA leave. The rational behind this prohibition is that a "leave pursuant to a temporary disability benefit plan is not unpaid . . . ." 29 C.F.R. § 825.207(d)(1). In other words, if the employee receives a financial benefit from a temporary disability plan, then one cannot characterize the leave as unpaid.

Here, the parties do not dispute that before taxes the plaintiff received a temporary disability benefit of $300.00 each week from the WHF. Under 29 C.F.R. § 825.207(d)(1), this means that the plaintiff's leave was not unpaid. Consequently, the defendant could not require the plaintiff to use her accrued leave, just as the December 17, 2003, opinion letter notes that the plaintiff could not rely "upon FMLA's substitution provision to insist upon receiving both temporary disability or workers' compensation and accrued paid leave benefits during such an absence." Dep't of Labor Op. Ltr. FMLA (Dec. 17, 2003). In this situation, the defendant's only option "in accordance with the regulations," is to "designate the temporary disability leave or workers' compensation absence [at the beginning of the absence] as FMLA leave and count the period of the absence under both the temporary disability plan or workers' compensation plan and FMLA." Id.

15

Although the defendant could count the leave under the FMLA, it could not do so with respect to the temporary disability leave because the WHF determines the employee's eligibility for the benefits. But this appears to be the result of the defendant's voluntary association with TMI. In other words, because of the defendant's membership in TMI, the defendant is bound to the NMFA, which in turn requires it to use the WHF for various benefits, including the temporary disability benefit at issue. Thus by voluntarily becoming a TMI member, the defendant cannot exercise part of the option the regulations provide when the employee receives temporary disability benefits. Instead, the defendant can only count the leave toward the statutory twelve work-weeks under the FMLA.

Lastly, the defendant suggests that this court use the analytical framework in a FMLA retaliation or discrimination claim to analyze the plaintiff's arguments. There are numerous problems with this suggestion. First and foremost, the plaintiff does not assert a retaliation claim under 29 U.S.C. § 2615(a)(2) and (b). No where in the records, does the plaintiff allege that after she engaged in protected conduct, only she and not any similarly situated employee who did not engage in the same conduct, was subjected to an adverse employment action, even though she performed her job in a satisfactory manner. *See Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). Moreover, in this context the Seventh Circuit rejected the burden-shifting approach inspired by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Illustrative is *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 712 (7th Cir. 1997), wherein the Seventh Circuit advised that

> [a]lthough a burden-shifting approach can be useful in discrimination cases as a heuristic, claims under the FMLA do not depend on discrimination. The question in a discrimination case is whether the employer treated one employee worse than another on account of something (race, religion, sex, age, etc.)

16

> that a statute makes irrelevant. A firm may treat all employees equally poorly without discriminating. A statute such as the FMLA, however, creates substantive rights. A firm *must* honor statutory entitlements; when one employee sues, the firm may not defend by saying that it treated all employees identically. The FMLA requires an employer to accommodate rather than ignore particular circumstances. In this respect the FMLA is like the National Labor Relations Act, the Fair Labor Standards Act, and the Employee Retirement and Income Security Act, all implemented without using the *McDonnell Douglas* approach. Applying rules designed for anti-discrimination laws to statutes creating substantive entitlements is apt to confuse, even if the adaptation is cleverly done. The district court's approach shows what can go wrong.

*Diaz v. Fort Wayne Foundry Corp.,* 131 F.3d 711, 712 (7th Cir. 1997). Accordingly, the court declines the defendant's suggestion.

Now, therefore,

IT IS ORDERED that the plaintiff's Motion for Summary Judgment (Doc. # 28) is granted.

IT IS FURTHER ORDERED that the defendant's Motion for Summary Judgment (Doc. # 34) is denied.

Dated at Milwaukee, Wisconsin, this 16th day of September, 2005.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. District Judge

¹Among the elements that the plaintiff must prove to prevail on this cause of action, is that the defendant is an employer as defined in 29 U.S.C. § 2611(4)(A) and that she is an eligible employee under 29 U.S.C. § 2611(2)(A). The statute defines an employer as

> (i) . . .any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;
>
> (ii) includes-
> (I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and
> (II) any successor in interest of an employer;
>
> (iii) includes any "public agency", as defined in section 203(x) of this title; and
>
> (iv) includes the General Accounting Office and the Library of Congress.

29 U.S.C. § 2611(4)(A). Here, the plaintiff alleges that the defendant is an employer and the defendant admits the same. (Compl. ¶ 4; Def.'s Answer ¶ 4.)

Although the plaintiff contends that she is an eligible employee, the defendant submits that it "is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore denies the same and puts [p]laintiff to her proof." (*Id.* ¶ 3.) Contrary to its statement, the defendant did nothing to require the plaintiff to prove that she is an eligible employee and did not file a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure to challenge the sufficiency of the complaint to state a claim upon which the court can grant relief and/or seek a judgment on the pleadings. Notwithstanding this omission, the court notes that the defendant's assertion has no impact on the court's "'subject matter jurisdiction' in the sense of the federal court's competence under Article III." *Frey v. E.P.A.*, 270 F.3d 1129, 1132 (7th Cir. 2001).

As the United States Court of Appeals for the Seventh Circuit explained in *Frey*, when an individual fails to comply with the elements of the federal statute, the individual "will not prevail, but the court's power to adjudicate the case is clear, and a dismissal should be predicated on Federal Rule of Civil Procedure 12(b)(6), not on 12(b)(1)", which seeks dismissal for lack of subject matter jurisdiction. *Frey*, 270 F.3d at 1132. For the

> standard rule in considering jurisdictional challenges is that when the court's jurisdiction and the claim for relief are predicated on the same federal statue but the basis for relief is subsequently found to be inapplicable, the district court should not dismiss the case under Rule 12(b)(1), but rather proceed as if jurisdiction exists and determine the merits of the claim under Rule 12(b)(6).

*Id.*

Nevertheless, under 29 U.S.C. § 2611(2)(A) an "eligible employee" is "an employee who has been employed- (i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). Here, the parties agree that the plaintiff has been employed by the defendant since February 26, 1999, and that the plaintiff used the defendant's FMLA leave form on May 23, 2003, to request a FMLA leave. (Compl. ¶ 3; Def.'s Answer ¶ 3; Villa Aff., Ex. 1 [hereinafter "Harrison Dep."] at 19; Ex. 4.) They also agree that the defendant approved the plaintiff's leave application on June 5, 2003. (Harrison Dep. at 19-20;

18

Ex. 4.) Moreover, the defendant advises that the plaintiff under the FMLA, "was able to take all leave to which she was entitled, without interference or restraint." (Def.'s Br. at 2.) The fact that the plaintiff was an employee of the defendant's approximately four years and three months before she requested leave under the FMLA, coupled with the defendant's admission that it approved the plaintiff's FMLA leave and that she was entitled to take such a leave, means that the defendant admits that the plaintiff is an eligible employee as defined in § 2611(2)(A).

---

[2] The statute provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

[3] The section governs right of action and provides that

> [a]n action to recover the damages or equitable relief prescribed in paragraph (1) may be maintained against any employer (including a public agency in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of -
>
> (A) the employees; or
> (B) the employees and other employees similarly situated.

29 U.S.C. § 2617(a)(2).

[4] The collective bargaining between TMI and the Teamsters determines the contribution amount. (Harrison Dep. at 17-18; Pl.'s Br. at 3; Pl's Proposed Findings of Fact ¶ 7.) )

[5] The statute defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves - (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).